## In re Anonymous No. 12 D.B. 76

Disciplinary Board Docket no. 12 D.B. 76.

PEARLSTINE, *Board Member*, August 30, 1977—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF THE PROCEEDINGS

At the above number, a petition for discipline was filed by the office of disciplinary counsel naming [ ] as respondent therein. In due course, the matter was assigned to a hearing committee [ ], comprised of [ ], chairman, [ ], and [ ], members. A hearing was held at the office of the disciplinary board at [ ], Pa., at which hearing [ ], Esq. and [ ], Esq., represented petitioner, and [ ], Esq., represented respondent. The hearing committee was advised that the facts in the proceeding were not subject to controversy and accordingly a stipulation and other exhibits were received into evidence. Respondent testified in his own behalf.

After the testimony was closed, the hearing committee reported in its conclusions of law that respondent had violated the following disciplinary rules as to:

## CHARGE 1—MR. AND MRS. [A]

a. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

b. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him.

c. D.R. 7-102(A)(5): A lawyer shall not knowingly make a false statement of law or fact. (Incorrectly cited as D.R. 7-101(A)(5).)

## CHARGE 2—[B]

The hearing committee reported in its conclusions of law that respondent had violated the following disciplinary rules as to this complaint:

a. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

b. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him.

c. D.R. 7-102(A)(5): A lawyer shall not knowingly make a false statement of law or fact.

In its report the hearing committee discussed each case individually, but made its ultimate disposition of the cases as a unit. The ultimate disposition of the cases recommended by the hearing committee was a private reprimand for respondent before the disciplinary board. The board adopted the findings and conclusions of the hearing committee and at the same time rejected the recommendation for discipline of private reprimand before the disciplinary board as proposed by the hearing committee and in its place recommends to your honorable court, that respondent, [  ], be administered public censure by the Supreme Court.

## II. FINDINGS AND DISCUSSION

Respondent, [  ], was admitted to practice law in the Commonwealth of Pennsylvania and his office is located at [  ]. He was the general claims attorney for the [C] company at the time of the occurrence of both events.

[A] Matter

On or about February 19, 1973, Mr. and Mrs. [A] were involved in an automobile accident involving one [D], who was insured by [E]. [A] was referred to respondent by his father-in-law, who was a co-employe in the accounting division of [C].

On or about March of 1973, respondent agreed to represent the claimants on a contingent fee basis of 20 percent of the gross recovery on a so-called oral power of attorney. The total of the special damages was approximately $300. Respondent failed to contact [E] regarding the personal injury claims and failed to forward special damages and medical reports pursuant to their requests.

On or about December 1974, respondent falsely advised Mr. [A] that the case was scheduled for arbitration on January 8, 1975; this misrepresentation was part of a course of conduct calculated to conceal the fact that suit was never instituted by respondent. By February 19, 1975, respondent failed to file suit against [D], as a result of which failure the [As'] claims were barred by the statute of limitations.

On or about January 8, 1975, respondent advised Mr. [A] that on January 7, 1975, counsel for [E] made an offer to settle the [As'] claim for $1,950. The [As] agreed to accept settlement of their claim in that amount.

On May 2, 1975, Mr. [A] wrote to respondent requesting a disbursement sheet and an approximate date of payment. On May 5, 1975, respondent replied to Mr. [A] and advised that out of the total of $1,950, his fee of $390 would be deducted and that payment would be made within approximately two weeks from the time of the receipt of executed re-

leases. Respondent prepared a general release which was signed by Mr. and Mrs. [A] on May 16, 1975, for a consideration of $1,950.

On or about June 12, 1975, respondent represented to Mr. [A] that the insurance company had sent a treasurer's check drawn to the order of Mr. and Mrs. [A] and respondent in the amount of $1,950. A check of the [E] drawn to the co-payees was duly endorsed by the [As], whereupon respondent delivered his personal check for $1,560 drawn to the order of Mr. and Mrs. [A]. This stratagem was designed to deceive the [As] into believing that the check was an insurance company check made payable to the claimants and their attorney. At the hearing respondent was unable to produce a file of this matter.

## [B] Matter

Mrs. [B], approximately 80 years of age, sustained personal injuries as a result of a fall on a staircase in a building owned by the [F] corporation on or about October 15, 1972.

On or about April 10, 1973, [C] notified Mrs. [B], through her son-in-law, Mr. [G], that they were denying liability for Mrs. [B's] injuries. Shortly thereafter Mr. [G], on Mrs. [B's] behalf, retained respondent to represent Mrs. [B] with respect to her personal injury claim.

Respondent failed to file any lawsuit in behalf of Mrs. [B] in regard to the subject matter, but did advise Mrs. [B], through her son-in-law, that suit had been filed and that the case was listed for trial on or about November of 1974. [C] did not enter into any negotiations with respondent and in a letter sent to the disciplinary counsel said that they had

no knowledge of respondent being involved in the case.

The statute of limitations ran on October 15, 1974. On June 22, 1975, respondent prepared a settlement release for the consideration of $2,150, which Mrs. [B] executed and returned to respondent. Despite repeated promises to the claimant that the check in full settlement would be forthcoming by September 3, 1975, respondent failed to forward settlement check and on that date respondent advised Mr. [G] that he failed to file suit prior to the tolling of the claim by the statute of limitations. Respondent had not paid Mrs. [B] any sum of money and although he assured Mr. [G] that he had malpractice insurance, at the hearing he answered the question categorically that he did not have malpractice insurance, nor has payment been made by any source.

In this matter, the issue is not how many sections of the code of professional responsibility have been violated by respondent, but rather the type of discipline the board should recommend to your honorable court as the enforcing agency. As the disciplinary rules should be uniformly applied to all lawyers regardless of the nature of their professional activities, so should discipline be uniformly administered.

In these matters, the "character" of the offense is patent. There has been an unconscionable delay and mismanagement by respondent in both matters referred to. While the fact that respondent made payment out of his own funds may be considered as a mitigating circumstance (Kraus's Case, 322 Pa. 362, 185 Atl. 737 (1936)), so far as the [A] case is concerned, both matters must be considered as a unit.

In both cases respondent advanced material falsehoods to his clients about their respective cases, amounting to an extensive pattern of deception. The hearing committee found as a fact that respondent did not advise Mrs. [B] and her son-in-law of his failure to timely file suit with respect to Mrs. [B's] claim until September 3, 1975, ten months after the statute of limitations tolled the claim and more than two months after the fictitious release was executed by Mrs. [B] on June 23, 1975. Respondent admits that his motive for engaging in a calculated course of deceptive conduct was to avoid personal and professional embarrassment.

The preliminary statement of the code of professional responsibility sets forth a policy: "The severity of judgment against one found guilty of violating a Disciplinary Rule should be determined by the character of the offense and the attendant circumstances."

Having taken the mitigating circumstances into account, it is the opinion of the members of the full board that private discipline is inadequate and is inconsistent with the character of the offense and the attendant circumstances.

## RECOMMENDATION

This board recommends to your honorable court that respondent be administered public censure by the Supreme Court.

## ORDER

EAGEN, *C.J.*, And now, this January 9, 1978, the report and recommendation of the Disciplinary Board of the Supreme Court dated August 30, 1977, is hereby accepted; and it is ordered, that [respondent] be subjected to public censure by the

Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing April 10, 1978, at Philadelphia.

## CENSURE

([Respondent A] and [Respondent B] approached the bench.)

CHIEF JUSTICE EAGEN: Gentlemen, after disciplinary proceedings conducted by the disciplinary board of this court, you have both been found guilty of violations of the Code of Professional Responsibility to which lawyers in Pennsylvania are required to adhere.

You have both neglected legal matters which were entrusted to your care and then attempted to cover up your deficiencies by making misrepresentations to your clients.

[B],[1] in two instances you were retained to represent parties who had personal injury actions. You failed to protect your clients' rights by failing to institute the actions within the legal period permitted. Then you compounded your misconduct by telling your clients that suit had been instituted, and then made the further misrepresentation or falsehood by saying that an offer of settlement had been made and, in a least one of these two instances, you advised and secured from your client a falsified settlement agreement.

[A],[2] your misconduct followed the same pattern, although it was confined to one instance or case. In

1. Respondent in this case.

2. Respondent in In re Anonymous No. 7 D.B. 77, infra.

that instance the lawsuit should have been instituted in California where the statute of limitations for such personal injury actions is limited to one year. You, after having neglected to have the suit instituted within the required time period, compounded again the misconduct by lying to your client and also in preparing and securing from your client an executed false release of settlement.

You both have acknowledged your faults and tried to rectify your misconduct by making restitution in a substantial amount. In your case, [A], I think you paid over $25,000 of your own money; and [B], in the two instances in which you were involved, I think you paid a total of $6,000, so that it should be a pretty costly lesson to you both.

Because of the fact that you have tried to rectify and make whole the people who were in a position to lose because of your neglect and the fact that your professional records appear to be otherwise unblemished, this court has decided to call you before the court today for public censure rather than to impose more serious sanctions. However, we don't want you to underestimate the character of your sins. You have performed a disservice to this court and to the profession to which you are privileged to be members.

The record of this public censure this morning will be made a matter of public record and made part of the same file that began in the prothonotary's office of this court the day you were admitted and took an oath to so conduct yourselves in the practice of law that would be with all due fidelity to the court and to your clients.

You are now excused.